UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**KEVIN BENNETT**                                                                                              **PLAINTIFF**

v.                                                                    **CIVIL ACTION NO. 4:23-CV-00126-JHM**

**ROY WASHINGTON,** *et al.*                                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants Gary Skaggs, Roy Washington, and Grayson County for summary judgment pursuant to Federal Rule of Civil Procedure 56. [DN 68]. Plaintiff Kevin Bennett filed a response. [DN 75]. Defendants did not file a reply. Recently, Plaintiff filed a motion for the Court to take notice that the summary judgment motion was ripe for decision. [DN 79]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 against Grayson County Detention Center ("GCDC") APRN Roy Washington, GCDC Medical Director Gary Skaggs, and United States Marshals Service ("USMS") Deputy Greg Thiel in their individual and official capacities. [DN 1]. At the time he filed his complaint, Plaintiff was a federal pretrial detainee incarcerated at GCDC. Plaintiff brought claims against these Defendants for deliberate indifference to his serious medical needs in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. At the time he initiated this action, Plaintiff also filed a motion for a temporary restraining order and a preliminary injunction. [*Id.*] The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A, dismissed Plaintiff's Eighth Amendment claims, and allowed his Fifth and Fourteenth Amendment claims to proceed against Washington, Skaggs, Thiel, Grayson County, and the USMS. [DN 8]. The Court also ordered Defendants to respond to Plaintiff's motion for a preliminary injunction.

The record reflects that Plaintiff was sentenced in his federal criminal case on December 19, 2023. *United States v. Bennett*, No. 1:21-CR-185-SEB-DML, DN 82 (S.D. Ind. 2023). On January 24, 2024, Plaintiff was transferred to the custody of the Marion County (Indiana) Jail on the execution of an Indiana state warrant. [DN 24, DN 25]. Because Plaintiff was no longer held in the GCDC or in the USMS's custody, the Court denied as moot Plaintiff's motion for a temporary restraining order and a preliminary injunction. [DN 26].

On February 5, 2024, Defendants the USMS and Deputy Thiel moved to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). [DN 27, DN 28]. The Court granted their motions finding that a Fifth Amendment deliberate indifference claim is not cognizable under *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [DN 56].

Defendants Grayson County, Washington, and Skaggs now move for summary judgment on Plaintiff's remaining claims. [DN 68].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); 28 U.S.C. § 1746.

### III. DISCUSSION

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws

of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Plaintiff asserts Fourteenth Amendment deliberate indifference claims against Defendants Skaggs, Washington, and Grayson County for their alleged treatment of his testicular cyst and failure to treat his mental illnesses. The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted); *Gist v. Trinity Services Group*, No. 3:22-CV-P270-CHB, 2023 WL 2531735, at *4 (W.D. Ky. Mar. 15, 2023). The Fourteenth Amendment deliberate indifference standard has both an objective and a subjective component. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 316-317 (6th Cir. 2023). To make out such a claim, a pretrial detainee must demonstrate "(1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.'" *Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023) (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021))); *see also Helphenstine*, 60 F.4th at 317.

Under the post-*Brawner* framework, the first question is whether the plaintiff had a serious medical need, which has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Vontz v. Hotaling*, No. 2:19-CV-12735, 2023 WL 2881350, at *6 (E.D. Mich. Mar. 6, 2023) (citation omitted). In cases involving only "minor maladies or non-obvious complaints of a serious need for medical care," or where the deliberate indifference claim is based on the prison's failure to treat a condition adequately, then the plaintiff must also submit verifying medical evidence to satisfy the objective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004); *see also Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

"As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation, either under the Eighth or the Fourteenth Amendment." *Vontz*, 2023 WL 2881350, at *6 (citing *Brawner*, 14 F.4th at 596 (stating that a plaintiff must show "more than negligence")), and *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (other citations omitted)).

### A. Deliberate Indifference to Testicular Cyst and Pain

Plaintiff states that on October 2, 2023, he filled out a medical request form to be seen for a testicular cyst. [DN 75-1 at 57]. On October 19, 2023, Plaintiff saw Defendant Washington for a testicular cyst and the pain associated with the cyst. [DN 1 at 5]. Plaintiff states that at the appointment, Defendant Washington represented that in addition to starting Plaintiff on antibiotics, he would order Tylenol for him and an ultrasound of his testicle. [*Id.*]. Defendant Washington denied informing Plaintiff that he would order an ultrasound of the cyst. [DN 75-1 at 8]. Plaintiff represents that starting on October 20, 2023, he repeatedly requested the pain medication (Tylenol) that Defendant Washington had prescribed him. When Plaintiff did not receive the Tylenol, Plaintiff

grieved the denial of the medication, and Defendant Skaggs informed him that there was no prescription for it and to buy it from the commissary even though Plaintiff was indigent. [DN 1 at 5]. No evidence suggests that Defendant Skaggs contacted Defendant Washington regarding the alleged prescription error during the two-week period before Plaintiff again saw Defendant Washington.

At his next appointment on November 2, 2023, Plaintiff asserts that Defendant Washington once again stated that he would order pain medication and an ultrasound of Plaintiff's testicle. [*Id.* at 6]. The medical records reflect that Defendant Washington ordered the Tylenol, but someone discontinued the order because of a disciplinary incident involving Plaintiff allegedly hoarding medication in his cell in September of 2023. [DN 68-4; DN 75-1 at 8]. Defendant Skaggs refused to give Tylenol to Plaintiff because of the same disciplinary incident and informed him to purchase it from the commissary. [DN 1 at 6]. Defendants Washington and Skaggs admit in their responses to Plaintiff's interrogatories that they had authority to order the Tylenol be crushed or floated. [DN 75-1 at 8, 11]. Plaintiff avers that he spoke to Defendant Skaggs personally about this matter, and he informed Plaintiff that he did not care about Plaintiff's pain and that he shouldn't be in jail. [DN 1 at 7]; *see also* [DN 1-1, Alisawi Fahad Aff. at 2]. Based on this conduct, Plaintiff alleges that Defendant Washington was deliberately indifferent to Plaintiff's serious medical need by failing to order pain relief medication, failing to order the pain medication to be crushed or floated to avoid any potential for hoarding, and failing to order an ultrasound. [DN 1 at 10]. Plaintiff claims that Defendant Skaggs was deliberately indifferent to Plaintiff's serious medical need by failing to order pain relief medication and failing to order the pain medication be crushed or floated to avoid any potential for hoarding Tylenol. [*Id.*].

### *1. Objective Prong: Serious Medical Need*

Defendants argue that summary judgment on Plaintiff's deliberate indifference to a serious medical need claim related to his testicular cyst is warranted. Defendants contend that Plaintiff has not produced medical or expert proof that his condition worsened due to the alleged delay in treatment and, therefore, cannot establish the objective component of the deliberate indifference standard. [DN 68-1 at 8]. They cite to *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001), for the proposition that a plaintiff is required to place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. *Id.*

As stated earlier, to satisfy the objective prong of a deliberate indifference claim, a plaintiff must show that his medical needs were sufficiently serious, which has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Vontz*, 2023 WL 2881350, at *6 (citation omitted). *See Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (explaining that "[t]he ability to satisfy the objective prong with a showing that the injury was diagnosed by a physician who mandated treatment necessarily contemplates the diagnosis being made before the defendant's alleged deliberate indifference"). In cases involving only "minor maladies or non-obvious complaints of a serious need for medical care," or where the deliberate indifference claim is based on the prison's failure to treat a condition adequately, then the plaintiff must also submit verifying medical evidence to satisfy the objective component. *Blackmore*, 390 F.3d at 898; *see also Napier*, 238 F.3d at 742.

Here, the record reflects that Defendant Washington treated Plaintiff with antibiotics to manage the infection that caused the cyst. Accepting his averments in his verified complaint and his affidavit as true, Plaintiff has not alleged, much less submitted medical evidence to show, that

the failure to receive an ultrasound or pain medication resulted in a serious medical injury and, as such, fails to raise a genuine dispute as to the objective component of this deliberate indifference claim. *See Taylor v. Well Path Med.*, No. 3:22-CV-00705, 2024 WL 3897449, at *8 (M.D. Tenn. Aug. 20, 2024) (granting summary judgment where pretrial detainee did not present an urgent or acute medical need and detainee failed to support his contention that he should have been provided with different or more prompt treatment with any type of expert medical testimony); *White v. Lewis*, No. 4:22-CV-00123-JHM, 2024 WL 4047162, at *9 (W.D. Ky. Sept. 4, 2024).

Thus, Plaintiff has failed to satisfy the objective prong of the deliberate indifference test.

### *2. Subjective Prong:  Reckless Disregard*

Even if Plaintiff could survive summary judgment on the objective component of the deliberate indifference analysis, he nonetheless fails to raise a genuine dispute that Defendants Washington and Skaggs acted with reckless disregard with respect to his testicular cyst such to establish the modified subjective component.  The uncontroverted record reflects that Plaintiff submitted a medical request form regarding a testicular cyst on October 2, 2023; GCDC medical staff placed Plaintiff on the appointment list; Defendant Washington saw Plaintiff on October 19, 2023; he placed Plaintiff on antibiotics; he saw Plaintiff again on November 2, 2023, and addressed Plaintiff's concerns of a testicular cyst and the resulting pain.  Plaintiff's concerns amount to a disagreement with Defendants Washington and Skaggs's decision on whether to order an ultrasound or a Tylenol prescription, which cannot form the basis of a Fourteenth Amendment deliberate indifference claim. *See Hutchins v. Pollack*, No. 1:22-CV-950, 2024 WL 3290840, at *8 (W.D. Mich. Feb. 29, 2024) (pretrial detainee's contention that he should have been prescribed a particular medication was insufficient to satisfy the subjective component of the Fourteenth Amendment deliberate indifference standard); *see generally*, *Helphenstine*, 60 F.4th at 322 (post-*Brawner*

Fourteenth Amendment deliberate indifference case observing that, generally, a patient's disagreement with physician's course of treatment alleges, at most, medical malpractice and is not cognizable under § 1983).

Plaintiff has not raised a genuine dispute as to whether Defendants Washington and Skaggs were deliberately indifferent to Plaintiff's testicular cyst. As such, summary judgment on this claim in favor of Defendants Washington and Skaggs is appropriate. Similarly, because Plaintiff has failed to establish a constitutional deprivation related to the testicular cyst, Plaintiff's claim against Grayson County on this issue likewise fails.

### B. Deliberate Indifference to Mental Health Needs

Plaintiff alleges that while at GCDC he repeatedly sought mental health treatment for worsening conditions associated with his depression, anti-social personality disorder, and schizoaffective disorder. [DN 1 at 10]. Plaintiff avers that he suffered from hallucinations, hearing voices, and suicidal ideations. [*Id*. at 11]. Plaintiff states that he disclosed his mental illnesses and the medications he was on for his mental illnesses when booked at GCDC. [DN 75 at 10]. Plaintiff contends that he not only wrote to the jailer of GCDC but also informed Defendants Washington and Skaggs that he suffered from these mental health conditions, that he was previously on two psychotropic medications that managed these symptoms, and that he requested to see a mental health professional. [DN 1 at 8, 10]. According to Plaintiff, Defendant Washington informed him that if he needed psychiatric medication or to see a psychologist or a psychiatrist, he should contact his lawyer and have him contact the USMS. [*Id.* at 8]. Plaintiff states that Defendant Washington explained to Plaintiff that all the GCDC medical staff could do was document what Plaintiff told them. [DN 75 at 12]. Additionally, GCDC's staff, including Defendants Washington and Skaggs, repeatedly stated verbally and in written communications with Plaintiff that GCDC did not offer

mental health services at its facility. [DN 1 at 10].

In compliance with instructions from GCDC, Plaintiff's federal criminal defense attorney reached out to USMS Deputy Thiel and others at the USMS to request mental health treatment for Plaintiff or his transfer to a facility that offered mental health treatment. [*Id.* at 12]. When the USMS received communications from Plaintiff's attorney regarding his mental health treatment request, USMS Deputy Cody Medlock states that the USMS inquired of GCDC regarding Plaintiff's request and GCDC stated that Plaintiff "was being seen." [DN 25-1, Medlock Decl. at 7–8, at ¶ 3.2]. Specifically, Medlock averred that "USMS records show that on December 6, 2023, Supervisory Deputy Marshal Thiel emailed the medical director at GCDC to ask if Bennett had ever approached the medical staff there about mental health treatment, and other related questions." [*Id.* at 7, at ¶ 3.2]. According to Medlock, "GCDC responded that Bennett had been seen by GCDC's medical provider in relation to mental health and was currently on two medications for mental health." [*Id.*]. Finally, based upon the declaration of Medlock, the USMS represented that "[i]f GCDC staff has instructed Bennett that he must request mental health services from the USMS, this is incorrect, and Bennett should be seen by facility medical staff, . . . make his needs known to the GCDC staff, [and] [i]f GCDC staff believes Bennett or another detainee needs mental health treatment, GCDC staff should provide that treatment on site, or request USMS approval for necessary off site treatment." [DN 25 at 5 (citing Medlock Decl. at 3–8, ¶¶ 1.5, 2.1–2.11, 3.2–3.3)].

Defendants move for summary judgment arguing that there are no facts, evidence, or testimony supporting Plaintiff's alleged denial of mental health treatment, much less a showing that the alleged denial of treatment "adversely affected his mortality or morbidity" or subjected him to a substantial risk of serious harm. [DN 68-1 at 9]. Defendants maintain that "[t]he Affidavit of the only medical provider clearly shows that he did not perceive the need for mental health services for

BENNETT, and apparently BENNETT did not perceive the need since he was informed of the process to request the services but never followed the procedure to secure mental health services. BENNETT never asked the USMS to approve mental health services." [*Id.* at 10]. In other words, Defendants contend that because GCDC does not offer mental health services, because approval for mental health services must be requested by a pretrial detainee directly to the USMS, and because none of Plaintiff's GCDC medical records reflect that he sought outside mental health treatment from the USMS, Plaintiff fails to establish evidence to suggest that "his mortality or morbidity" was seriously affected by the denial of mental health treatment or that Defendants subjected him to a substantial risk of serious harm. [*Id.*].

### *1. Who Provides Mental Health Services at GCDC?*

In light of the clear explanation by the USMS as to how pretrial detainees are to obtain mental health treatment at GCDC, the Defendants' continued argument that a federal inmate must directly request mental health services from the USMS is perplexing—and absolutely wrong. The USMS contracts with states and other political subdivisions, such as Grayson County, for the imprisonment, subsistence, and care of pretrial detainees, [DN 25-1; Cody Medlock Decl. at ¶¶ 0.2, 2.1];18 U.S.C. § 4002, but day-to-day operations of the contractor's (GCDC's) facilities, including medical care, are governed by that contractor. [*Id.*]. While the USMS pays for outpatient and emergency medical care for federal pretrial detainees, it relies on its contractors, such as GCDC, to provide in-house medical staff and care to those detainees. [*Id.*; Medlock Decl. at ¶¶ 2.4, 2.5, 2.6]. At the USMS's last inspection of GCDC at the end of October 2023, GCDC had a contract physician who would treat people for mental health issues and prescribe and adjust medications as needed. [*Id.*; Medlock Decl. at ¶¶ 2.4, 2.5].

It is undisputed that GCDC is contractually responsible for offering mental health services

to pretrial detainees, such as Plaintiff. [DN 13 at 3, 5]. USMS Deputy Medlock unequivocally stated that the provision of mental health treatment to federal pretrial detainees is the contractual responsibility of GCDC and that a federal pretrial detainee cannot directly request mental health services through the USMS as was directed by GCDC. [DN 25-1; Medlock Decl. at ¶¶ 2.6, 2.7, 3.1, 3.4]. In fact, Medlock averred that while GCDC does not employ an onsite mental health professional, GCDC may refer federal detainees with mental health issues to qualified mental health professionals. [*Id.*, Medlock Decl. at ¶¶ 2.3-2.5, 3.1]. Medlock represented that if GCDC medical staff determines such outside mental healthcare is necessary, the request is made by GCDC to USMS headquarters, where such requests are most often approved. [*Id.*; ¶¶ 2.6-2.7, 3.1]. Medlock further stated that GCDC never informed the USMS that Plaintiff needed mental health care that GCDC could not provide or requested outside mental health care for Plaintiff. [*Id.*; Medlock Decl. at ¶ 2.8]. Medlock's declaration is further supported by a declaration submitted by Medical Director Skaggs in another case, *Bennett v. U.S. Marshal's*, 4:22-cv-00022-JHM, in which he declared that mental health care treatment is available for federal pretrial detainees at GCDC through its medical provider. [DN 25-2; Skaggs Decl. at ¶ 3]. Defendants inexplicitly do not address the declaration of USMS Deputy Medlock or the declaration of Defendant Skaggs in their motion for summary judgment.

In response to Plaintiff's request for mental health services, Defendant Washington admits that Plaintiff was "routinely told [as early as October 12, 2023] the facility did not provide such services" and that to receive the off-site services, Plaintiff "could make a request to the [USMS] for mental health services." [DN 68-2, Washington Aff. at ¶¶ 7–9]. Similarly, with respect to Defendant Skaggs, the record reflects that in response to Plaintiff's October 12, 2023, "Resident Requisition," Defendant Skaggs responded: "We do not staff in house. You can have your lawyer

talk to the Marshalls." [DN 68-3]. Thus, at times, both Defendants and other GCDC staff members incorrectly informed Plaintiff that to obtain off-site mental health services, he would need to personally obtain approval from the USMS. [DN 75-1 at 14–15].

GCDC is contractually responsible for offering mental health services to federal pretrial detainees through their own medical provider. While GCDC does not employ an onsite mental health professional, it should refer federal detainees with mental health issues to qualified mental health professionals **if** a GCDC medical provider believes such referral is necessary. If GCDC medical staff determines such outside mental healthcare is necessary, **the request must be made by GCDC medical staff to USMS headquarters who will approve or deny such request.** [DN 25-1]. To insure that GCDC understands its responsibilities going forward, the Court will send this opinion to the Grayson County Judge Executive, County Attorney, and Jailer.

While it is clear that Defendants Washington and Skaggs provided incorrect information to Plaintiff, that, in and of itself, does not establish that they were deliberately indifferent to Plaintiff's serious medical needs. *See Hyman*, 27 F.4th at 1237. The Court must explore both the objective and subjective components of the Fourteenth Amendment deliberate-indifference standard.

### 2. Objective Prong: Serious Medical Need

As previously stated, the first question is whether Plaintiff had a serious medical need, which has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Vontz*, 2023 WL 2881350, at *6 (citation omitted); *see Burgess*, 735 F.3d at 477.

Records from the Indiana Department of Corrections reflect that Plaintiff suffers from depressive disorder, antisocial personality disorder, and schizoaffective disorder and that these disorders were diagnosed as early as May 9, 2016. [DN 75-1 at 25–26]. Indiana Department of

Corrections medical records dated July 19, 2019, further indicate that Plaintiff suffers from a "psychiatric disorder that causes some functional impairment and requires frequent psychiatric and/or psychological services." [*Id.* at 27]. As such, Plaintiff has been diagnosed by a physician with multiple mental health conditions. However, the record lacks recent medical records reflecting that prior to his entry into GCDC in August 2023, Plaintiff continued to suffer from serious medical issues associated with his diagnosed mental health conditions. Notwithstanding, for purposes of this motion for summary judgment, the Court will assume that Plaintiff had an ongoing serious medical need sufficient to satisfy the objective prong of the deliberate indifference standard.

### 3. *Subjective Prong: Reckless Disregard*

Defendants base their subjective prong argument on the Eighth Amendment deliberate indifference framework, instead of the Fourteenth Amendment post-*Brawner* framework subjective prong.[1] To prove the subjective prong of deliberate indifference in the context of a pretrial detainee, a plaintiff must prove, "more than negligence but less than subjective intent—something akin to reckless disregard." *Mercer v. Athens Cnty.*, 72 F.4th 152, 161 (6th Cir. 2023) (internal quotation omitted). Each Defendant must be considered individually. *Id.* at 161 ("We consider each defendant individually because we cannot impute knowledge from one defendant to another[.]") (internal quotations and citations omitted).

As noted above, where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical

---

[1] In their memorandum, Defendants rely on *Estell v. Gamble*, 429 U.S. 97, 104 (1976) and *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) to analyze Plaintiff's claims, noting that both Eighth and Fourteenth Amendment claims are governed by the same deliberate indifference standards. [DN 68-1 at 7]. Contrary to Defendants' representation, the Sixth Circuit has explicitly adopted a modified subjective prong for Fourteenth Amendment claims, as discussed above. *See Grote*, 85 F.4th at 405 (observing that "the level of culpability with which a defendant must act to establish deliberate indifference to pretrial detainees is lower than that necessary for convicted incarcerated individuals.") (citing *Brawner*, 14 F.4th at 596).

judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. "As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation[ ] under . . . the Fourteenth Amendment." *Vontz*, 2023 WL 2881350, at *6 (citing *Brawner*, 14 F.4th at 596); *see also Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) (holding, after the modification of the second prong of the Fourteenth Amendment's deliberate indifference standard in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), that "a difference of opinion about the proper course of treatment" does not demonstrate deliberate indifference).

Here, Plaintiff sought treatment for and reported symptoms relating to his mental health during his detention at GCDC. [DN 68-3; DN 68-4; DN 75-1 at 14–15, 28–31, 46–48, 51–56, 59]. Specifically, the record reflects that in late September, Plaintiff requested to see "mental health" and was informed that he could be scheduled to see the medical provider. [DN 75-1 at 46–47]. On October 1, 2023, Plaintiff filled out a Federal Inmate Doctor Request form stating that he had been diagnosed with "major depression, anti-social disorder, anxiety, and schizoaffective disorder, and I need adequate psychotherapy for my mental illness." [DN 75-1 at 28]. GCDC staff responded to Plaintiff indicating that "[p]sychotherapy services are not available—you can be seen by medical provider." [*Id.*]. In response to Plaintiff's Federal Inmate Doctor Request forms dated October 3 and 6, 2023, GCDC staff informed Plaintiff that GCDC did not have a psychologist or psychiatrist on staff, but that he was on the list "to see our medical provider." [*Id.* at 31, 48].

Plaintiff's medical progress notes dated October 19, 2023, and November 2, 2023, confirm that he was seen by Defendant Washington for a variety of medical issues, including his request for mental health services. Significantly, the October 19, 2023, progress note reflects that when

Plaintiff asked to be transferred to a facility that offers mental health therapy (*i.e.*, psychological counseling), Defendant Washington denied the request and advised him to document or journal as a coping mechanism. [DN 68-4]. In his affidavit, Defendant Washington confirmed that he had seen Plaintiff on at least two occasions and averred that "[d]uring the visits . . . I have not observed any actions, words, or symptoms that indicated to me that he needed mental health services." [DN 68-2 at ¶ 4].

In response to Plaintiff's multiple grievances, Defendant Skaggs informed Plaintiff that "[a]ll mental health is handle[d] by our medical provider" and that "[m]edical has addressed your health and you have seen the doctor"—thus, Defendant Skaggs was aware that Plaintiff had been seen and treated by a medical provider for his mental health complaints. [DN 75-1 at 52–53]. Additionally, in denying Plaintiff's third grievance appeal, GCDC Jailer Jason Woosley informed Plaintiff that "GCDC does not have a mental health doctor nor are we required to. Our doctor did not refer you to outside mental health care, therefore, we cannot do anything"—once again confirming that Plaintiff had been seen and treated by a medical provider. [*Id.* at 55]. The record further reflects that Defendant Skaggs, in responding to one of the inquiries by the USMS regarding Plaintiff, represented that Plaintiff had been seen by GCDC's medical provider in relation to his mental health, was currently on two medications for mental health, and had been non-compliant with his medication. [DN 25-1 at ¶ 3.2].

In a letter sent to Deputy Thiel, Plaintiff even acknowledged that he had been seen by GCDC's medical provider and that the medical provider prescribed mental health medication, but Plaintiff complained that the medical provider would not prescribe more powerful psychotropic medication or psychological (counseling) services. [DN 75-1 at 50]. Finally, the medical records

16

reveal that GCDC medical staff placed Plaintiff on medical watch to be closely monitored by staff on the two occasions that Plaintiff exhibited signs of alleged self-harm.

Contrary to Plaintiff's argument, the record does not evince recklessness on Defendants Washington and Skaggs's behalf, but rather demonstrates Plaintiff's dissatisfaction with not being transferred to a different facility, with not being prescribed a specific psychotropic medication, and with not being offered mental health counseling services at GCDC or from an outside provider. This, however, does not present a genuine issue of material fact as to whether Defendants Washington or Skaggs ignored or overlooked a serious medical need. *See Taylor*, 2024 WL 3897449, at *8 (pretrial detainee's "desire for different, more aggressive, or more prompt treatment is simply not sufficient to support a constitutional claim."). While Plaintiff may disagree with the adequacy of the treatment he received, such disagreement does not rise to a constitutional infirmity. *Id.* ("In the end, Plaintiff's claim . . . is based upon Plaintiff's dissatisfaction with the adequacy of the treatment that he received, which is insufficient to support a constitutional claim."). Plaintiff, by his own admissions in his complaint and letter to Deputy Thiel, alleges deliberate indifference for not receiving the treatment of his choice.

Furthermore, Defendant Washington's determination that Plaintiff did not need a more powerful psychotropic medication or did need to see a psychologist or psychiatrist "amounts to one doctor's difference of opinion with another's about the proper course of treatment, which may give rise to a negligence claim, but negligence is not sufficient to meet the modified standard under *Brawner*." *Cook v. Daviess Cnty. Det. Ctr.*, No. 4:22-CV-P48-JHM, 2023 WL 8004874, at *8 (W.D. Ky. Nov. 17, 2023) (citing *Anderson v. Monroe Cnty. Corr. Facility*, No. 2:22-CV-4428, 2023 WL 3814001, at *2 (S.D. Ohio June 5, 2023)) (medical provider's "failure to retain a specialist . . . fail[s] to state a deliberate indifference claim under the Fourteenth Amendment" because it

indicates only negligence or medical malpractice which is insufficient under *Brawner*) (citing *Brawner*, 14 F.4th at 596).

Based on this record, Plaintiff has failed to raise a genuine dispute as to whether Defendant Washington or Defendant Skaggs acted either intentionally to ignore a medical need, or recklessly failed to act reasonably to mitigate the risk the serious medical need posed. *Wagle v. Farris*, No. 5:21-CV-12881, 2023 WL 5988615, at *6 (E.D. Mich. July 25, 2023) (granting summary judgment where plaintiff disagreed with physician's course of treatment). Thus, Plaintiff has failed to establish that Defendants were deliberately indifferent to his serious medical needs, and the Court finds that Defendants Washington and Skaggs are entitled to summary judgment.

### C. Grayson County

Plaintiff alleges that Defendant Grayson County is responsible for the deprivation of his mental health treatment because the unconstitutional actions of its employees resulted from allegedly unlawful policies or customs of the county. Defendant Grayson County maintains that Plaintiff was not deprived of any constitutional rights because he was provided adequate medical care. [DN 68-1 at 4]. When a § 1983 claim is made against a municipality or county such as Grayson County, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality as an entity is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

Because the Court finds that Plaintiff has failed to demonstrate a constitutional violation, summary judgment in favor of Grayson County is appropriate.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. The motion by Plaintiff for the Court to take notice that the summary judgment motion

is ripe for decision [DN 79] is **MOOT**.

2. The motion by Defendants Grayson County, Washington, and Skaggs for summary judgment on Plaintiff's Fourteenth Amendment deliberate-indifference claims [DN 68] is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: March 13, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
    Counsel of Record
    Grayson County Attorney Jeremy Logsdon, Grayson County Court House, 10 Public Square, Leitchfield, KY 42754
    Grayson County Judge Executive Kevin Henderson, 130 E. Market Street, Leitchfield, KY 42754
    Grayson County Jailer Woosley, GCDC, 320 Shaw Station Road, Leitchfield, KY 42754

4414.014